**FILED**

# IN THE UNITED STATES DISTRICT COURT
## FOR THEEASTERN DISTRICT OF VIRGINIA
### RICHMOND DIVISION

2008 OCT 27 P 4: 20

CLERK US DISTRICT COURT
RICHMOND, VIRGINIA

VIRGINIA STATE CONFERENCE OF NATIONAL
ASSOCIATION FOR THE ADVANCEMENT OF
COLORED PEOPLE BRANCHES, as an organization
and representative of its members; KING SALIM
KHALFANI, WALTER T. KENNEY, and RACHEL
ACHEE,

                    Plaintiffs,

v.                             Case No    3.08cv692

TIMOTHY M. KAINE, Governor of the
Commonwealth of Virginia; JEAN CUNNINGHAM,
Chairman, Virginia State Board of Elections;
HAROLD PYON, Vice Chairman, Virginia State
Board of Elections; NANCY RODRIGUES,
Secretary, Virginia State Board of Elections;
GEORGE WILLIAM THOMAS, Chairman, City of
Richmond Electoral Board; CECILIA DABNEY, Vice
Chairman, City of Richmond Electoral Board;
DOROTHY DOCKERY, Secretary, City of Richmond
Electoral Board; J. KIRK SHOWALTER, City of
Richmond General Registrar; JAMES H. HINSHAW,
Chairman, City of Norfolk Electoral Board; TED
MAROULIS, Vice Chairman, City of Norfolk
Electoral Board; W. DONALD BROWN, Secretary,
City of Norfolk Electoral Board; ELISA LONG, City
of Norfolk  General Registrar; J.A.G. PARRISH,
Chairman, City of Virginia Beach Electoral Board;
TIM BARROW, Vice Chairman, City of Virginia
Beach Electoral Board; SHIRLEY MULDERRIG,
Secretary, City of Virginia Beach Electoral Board; and
EDITH HARRINGTON, City of Virginia Beach
General Registrar, in their  official capacities,

                    Defendants.

_____/

## **COMPLAINT**

This year, this country is witnessing unprecedented levels of new voter registration and voter turnout. Specifically, voters turned out in record numbers in the 2008 Presidential Primary, with 23 million more citizens voting nationally than had voted in any other prior primary, and voters have been registering in droves since that Primary. In the Commonwealth of Virginia alone, 436,000 new voters registered since January 2008, with the greatest percentage increases in communities of color. Election officials in Virginia are aware of the high registration numbers and the apparent increased interest in participating in this Presidential election and predict, rightly so, that they will result in record turnout in the Commonwealth for the November 2008 General Election. Local officials in some of the larger jurisdictions anticipate 80% to 85% of registered voters will turn out to vote, compared to 67% to 71% in the last Presidential election in 2004.

Despite these record registration numbers, and the Commonwealth's acknowledgement of the increased turnout on November 4th, the Commonwealth and its jurisdictions are inadequately prepared. The allocation of polling place resources is plainly irrational, non-uniform, and likely discriminatory. As Defendants know, polling places across the Commonwealth were under-resourced during the 2004 Presidential election, causing long lines that led to the disenfranchisement of voters who did not or could not wait, particularly in communities of color. To adhere stubbornly to inadequate levels of resources in the face of the increased registration and increased turnout will result in a meltdown on Election Day. Voters will face even longer lines than existed in 2004, and many more voters will lose their right to vote in this Presidential election than in the last.

This problem is particularly acute in the cities of Richmond, Norfolk, and Virginia Beach, and gives rise to this action. Specifically, election entities and election officials in

Richmond, Norfolk, and Virginia Beach have adopted resource allocation plans that unconstitutionally and otherwise unlawfully under- or mis-allocate polling place resources, including, specifically, voting machines and poll workers, in a manner and extent that infringes and burdens the rights of the voters in these cities and that disfranchises voters in these locales, including, particularly, African-American voters in Richmond, Norfolk and Virginia Beach. Specifically, Defendants' conduct violates the Equal Protection and Due Process Clauses of the Fourteenth Amendment to the United States Constitution, Section Two of the Voting Rights Act of 1965, and the Virginia Constitution.

Because no remedies at law exist that can protect Plaintiffs' constitutional and statutory rights, Plaintiffs seek relief from this Court. Specifically, Plaintiffs request this Court to issue an order requiring, among other things, the cities of Norfolk, Richmond, and Virginia Beach to (1) secure an adequate number of machines and allocate those machines in a more equitable manner and in a way that ensures that voters do not have to wait more than 45 minutes to vote, or re-allocate the existing inventory of machines in a more equitable manner and instruct poll workers to offer voters whose wait to vote by machine is likely to exceed 45 minutes the option to wait for a machine or to vote with a paper ballot, and (2) to extend voting hours for the November 4, 2008 General Election to 9:00 p.m. so to provide voters with more time to exercise their franchise.

If these modifications are not made, thousands, if not hundreds of thousands, of the Commonwealth's voters will be disenfranchised, including specifically, African-American voters.

3

## JURISDICTION AND VENUE

1.      This Court has jurisdiction of this Federal action pursuant to 28 U.S.C. §§ 1331, 1343(a)(3), 1343(a) (4), 2201(a), and 2202, and has supplemental jurisdiction over the State constitutional claim pursuant to 28 U.S.C. § 1367.

2.      Venue for this action is proper in the United States District Court for the Eastern District of Virginia pursuant to 28 U.S.C. § 1391(b).

## PARTIES

3.      Plaintiff Virginia State Conference of the National Association for the Advancement of Colored People Branches ("Virginia NAACP") is a membership organization of over one hundred statewide units of the national NAACP, the oldest and largest civil rights organization in the United States. The Virginia NAACP is headquartered in the City of Richmond, Virginia, with offices throughout the Commonwealth, including in Norfolk, Richmond, and Virginia Beach. Its members include, among others, citizens of all races who vote in these cities. The Virginia NAACP's membership stands at approximately 16,000 with some of its largest units located in Richmond, Norfolk and Virginia Beach. Members of the Virginia State Conference NAACP include citizens of the Commonwealth, of all races, nationalities, ethnicities, who live and vote throughout the various cities and counties of the State, including Richmond, Norfolk and Virginia Beach. There are over one hundred adult branches, youth units and college chapters in the Commonwealth of Virginia. One of the Virginia NAACP's principal priorities is to advance and protect the voting rights of its members and other citizens of the Commonwealth. To this end, it has established a voter protection program that includes, among other things, assisting its members and other citizens in registering to vote, educating the public on its rights under federal and state voting laws, operating a hotline for citizens who believe that their rights have been infringed upon or who suffer harassment

4

and/or intimidation at the polls, and protecting the rights of voters through advocacy and litigation. As such, the Virginia NAACP has been deemed to have standing to represent, and has represented, its members in a number of cases (voting and others) in the Federal and State courts located in the Commonwealth of Virginia.

4.    Plaintiffs are registered voters in the Commonwealth of Virginia who have been or will be affected by the conduct alleged herein, if it is not remedied. Specifically, KING SALIM KHALFANI is, and at all times relevant hereto was, a natural person, a citizen of the Commonwealth of Virginia and a registered voter who at all relevant times did reside in the City of Richmond. Mr. KHALFANI has voted in past elections and wants to vote in this election. However due to the lack of proper preparation by the Defendants, he faces imminent harm and believes that he will be unable to vote due to the anticipation of long lines at the polling station.

5.    Plaintiff Walter T. KENNEY is, and at all times relevant hereto was, a natural person, a citizen of the Commonwealth of Virginia and a registered voter who at all relevant times did reside in Richmond, Virginia. Mr. KENNEY has voted in past elections and wants to vote in this election. However due to the lack of proper preparation by the Defendants, he faces imminent harm and believes that he will be unable to vote due to the anticipated long lines at the polling station.

6.    Plaintiff Rachel ACHEE is, and at all times relevant hereto was, a natural person, a citizen of the Commonwealth of Virginia and a registered voter who at all relevant times did reside in Virginia Beach, Virginia. Ms. ACHEE has voted in past elections and wants to vote in this election. However due to the lack of proper preparation by the Defendants, she faces imminent harm and believes that she will be unable to vote due to the anticipation of long lines at the polling station.

7.      Defendant Timothy M. Kaine ("Kaine"), sued in his official capacity, serves as the Governor of the Commonwealth of Virginia. In this capacity, Kaine has the duty to adhere to and uphold the United States Constitution, the Virginia Constitution, and the statutory laws of the United States and the Commonwealth, including specifically the Fourteenth Amendment to the U.S. Constitution, Article X of the Virginia Constitution, and Section 2 of the Voting Rights Act. As Governor, Defendant Kaine appoints the three members of the Virginia State Board of Elections ("SBE") and designates one of them Secretary, pursuant to Va. Code Ann. § 24.2-102. The SBE is the state agency responsible for ensuring the citizens' right to vote and for administering elections in the Commonwealth of Virginia by, among other things, overseeing, directing, and coordinating the work of the county and city electoral boards and of the registrars to obtain uniformity in their practices and proceedings and legality and purity in all elections. Defendant Kaine is sued herein in his official capacity.

8.      Defendants Jean Cunningham and Harold Pyon serve as Chairman and Vice Chairman, respectively, of the SBE, the state agency responsible for ensuring the citizens' right to vote and for administering elections in the Commonwealth of Virginia by, among other things, overseeing, directing, and coordinating the work of the county and city electoral boards and of the registrars to obtain uniformity in their practices and proceedings and legality and purity in all elections. As Board members, they also promulgate rules and regulations and issue directives to electoral boards and registrars to ensure the proper administration of election laws. Va. Code Ann. § 24.2-103(A). Cunningham and Pyon are sued herein in their official capacities.

9.      Defendant Nancy Rodrigues ("Rodrigues") was appointed by Defendant Kaine to the position of Secretary of the SBE. In addition to the SBE Board member duties listed above, Defendant Rodrigues has a duty to further the voting rights of the citizens of the Commonwealth

and to ensure adherence with all federal and state election laws. As Secretary of the SBE, Defendant Rodrigues is also responsible for the administration of elections, and for fulfillment of the mission and responsibilities of the SBE. Specifically, in her capacity as Secretary of the SBE, Defendant Rodrigues is the chief election officer of the Commonwealth and has supervisory control over local election officials. Va. Code Ann. § 24.2-103. She is also designated as Virginia's state coordinator for implementation of federal elections laws including, the National Voter Registration Act of 1993 and the Help America Vote Act. Va. Code Ann. § 24.2-629; 42 U.S.C. §15403(e). In addition, she is charged with certifying all proposed voting systems. Va. Code Ann. § 24.2-629. Defendant Rodrigues is sued herein in her official capacity.

10.     Defendants George William Thomas Jr. ("Thomas"), Cecilia Dabney ("Dabney"), and Dorothy Dockery ("Dockery") serve as, respectively, the Chairman, the Vice-Chairman, and the Secretary of the City of Richmond Electoral Board. Defendants James H. Hinshaw ("Hinshaw"), Ted Maroulis ("Maroulis"), and W. Donald Brown ("Brown") serve as, respectively, the Chairman, the Vice-Chairman, and the Secretary of the City of Norfolk Electoral Board. Defendants J.A.G. Parrish ("Parrish"), Tim Barrow ("Barrow"), and Shirley Mulderrig ("Mulderrig") serve as, respectively, the Chairman, the Vice-Chairman, and the Secretary of the City of Virginia Beach Electoral Board.

11.     As Electoral Board members, each of these Defendants is charged under Virginia law with the preparation of ballots, the conduct of elections, and the ascertaining of election results, among other election-related duties. Electoral Boards appoint General Registrars for their city or county. Each Electoral Board Defendant is sued herein in his/her official capacity.

12. Defendant J. Kirk Showalter ("Showalter"), Defendant Elisa Long ("Long"), and Defendant Edith Harrington ("Harrington"), are General Registrars for Richmond, Norfolk, and Virginia Beach, respectively. As General Registrars, they are responsible for carrying out the duties prescribed by the Electoral Boards in relation to the conduct and administration of elections, including the allocation of polling place resources. Va. Code Ann. §§ 24.2-109(B), 24.2-114(19), 24.2-626. Defendants Showalter, Long, and Harrington are sued herein in their official capacities.

## PROBLEMS IN THE ALLOCATION OF RESOURCES IN THE 2004 ELECTION

13. Federal and Virginia law authorize state and local election officials to use a variety of resources to ensure lawful, proper, efficient, and fair elections. These resources include the use of certain electronic voting machines; the use of paper ballots, instead of or in addition to voting machines; the use of poll workers to assist voters and the administration of elections on Election Day. States also have flexibility as to the hours of operation of polling places. Virginia law requires that the State Board of Elections supervise and coordinate the work of electoral boards and general registrars to obtain uniformity in their practices. In addition, the Voting Rights Act of 1965 requires the administration of elections in a non-discriminatory manner.

14. Virginia polling places are open from 6:00 a.m. to 7:00 p.m. on Election Day. Jurisdictions use either optical scan or touch screen machines. Paper ballots have been used in instances of machine breakdowns and special elections. The Commonwealth of Virginia does not allow early voting and allows mail voting only with an acceptable excuse.

15. In the past, the Commonwealth and election officials established plans (formal or otherwise) for the allocation of resources across the state, including the allocation of voting

machines and poll workers, that were inadequate to protect voters' rights and efficiently administer elections.    These deficiencies led to inordinately long lines that resulted in the infringement of the rights of thousands of voters, and the disenfranchisement of many others. For example, there have been numerous reports that voters in the 2004 General Election had to wait 90 minutes to vote in some Richmond polling places, over an hour in Virginia Beach, and 80 minutes in Norfolk, with many people leaving without casting ballots due to long wait times. *See, e.g.,* Gordon Hickey, *Long Lines and Upbeat Attitudes Mark VA. Polls*, Richmond Times Dispatch, Nov. 3, 2004; John-Henry Doucette and Tony Germanotta, *It's Standing Room Only*, Virginian-Pilot, November 3, 2004; *Voter Turnout Heavy, Some Glitches Reported with Voting Equipment Locally*, wvec.com, November 2, 2004.

16.    These problems were well-documented and well-publicized, and they were known to the election officials in the Commonwealth of Virginia as they prepared for the General Election to be held on November 4, 2008. *See, e.g.,* Bob Lewis, "Va. Encourages Absentee Voting to Ease Crush," October 20, 2008, *available at* http://www.wtopnews.com/?nid=600&sid=1500733.

17.    It is also well-documented and well-publicized that the voter turnout in Virginia for the November 4, 2008, General Election is likely to reach record levels, and that election officials will face even greater challenges in this upcoming election than in the past fulfilling the rights and needs of its voters. *See, e.g.,* Bob Lewis, "Va. Encourages Absentee Voting to Ease Crush," October 20, 2008, *available at* http://www.wtopnews.com/?nid=600&sid=1500733; Debbie Messina, *Group Predicts Long Lines at Many polls in Virginia*, Virginian-Pilot, October 10, 2008; *Va. Flunks Election Preparedness Report Faults Contingency Plans*, Paper

Records, Washington Post, Oct. 19, 2008, Pg. C04; Jennifer A. Dlouhy, *States Urged to Have Backup Plans to Head Off Election Day Problems*, Seattle Post-Intelligencer, October 17, 2008.

18.     The Commonwealth's own documents show that the agencies and officials responsible for ensuring the lawful, proper, efficient, and fair administration of elections are aware of the potential high turnout and possible shortages of resources to meet the needs of voters presenting to vote.  Defendant Rodrigues herself has declared that the Commonwealth is expecting a "record turnout."  State Board of Elections, *Election Officials Prepare for High Voter Turnout,* Oct. 17, 2008, *available at*

http://www.sbe.virginia.gov/cms/Media/Press_Releases/ELECTION_OFFICIALS_PREPARE_
FOR_HIGH_VOTER_TURNOUT.html.

19.     In addition, Plaintiffs' counsel advised Defendants of the impact their allocation plans will have on the voting rights of Virginians, specifically indicating the impact of too few machines and misallocation of those machines.

20.     Despite these predictions, warnings, and past problems, Defendants have not developed, directed, or implemented uniform, rational, and non-discriminatory standards for the allocation of resources.  Instead, Defendants have approved, allowed, and/or adopted resource allocation plans that are known to be inadequate; and have ignored the facts before them and their obligation to protect the voting rights of Virginians.

## DEFENDANTS' ALLOCATION OF RESOURCES
## FOR THE NOVEMBER 4, 2008 GENERAL ELECTION

21.     Defendant Rodrigues has certified, the use of direct recording electronic ("DRE" or "touchscreen") machines for the cities of Norfolk, Richmond, and Virginia Beach. *See* http://www.sbe.virginia.gov/cms/Election_Information/Voting_Systems_Ballots/Index.asp.

22.     The Election Boards for Norfolk, Richmond, and Virginia Beach have requested and/or directed the General Registrars of their respective localities to develop and implement polling place resource allocation plans, which, among other things, set forth the number of voting machines and poll workers assigned to each polling place in each of the localities.

23.     The plans set by Defendants for the November 2008 General Election do not employ any rational or uniform rules or standards for the allocation of resources for precincts and polling places in Norfolk, Richmond, and Virginia, and, thus, the plans vary widely among these cities and within these cities.

24.     Indeed, Defendants' allocation plans appear to mirror those that governed the 2004 General Election in terms of disparate allocation among precincts.

25.     Defendants also know that the number of registered voters in the Commonwealth has increased tremendously since the last General Election and since the 2008 Primary. In 2004, there were 4,517,980 voters on the Commonwealth's rolls when the registration period ended. This number surged to 5,021,993 this year -- an increase of more than 504,000 voters.

26.     The registration levels in communities of color are even more impressive. As of January 2008, 37% of voters registered are minorities, compared to 24%, which was the percentage before this election cycle. *See* Advancement Project, *End of the Line? Preparing for a Surge in Voter Turnout in the November 2008 General Election*, Oct. 2008, at 9, *available at* www.advancementproject.org.; *see also* Tim Craig, *Community Voters Project Registers 82,000 Minorities*, Oct. 7, 2008, Washington Post, *available at* http://voices.washingtonpost.com/virginiapolitics/2008/10/community_voters_registers_820. html.

27. The increased level of registration and apparent heightened interest in this Presidential contest will affect voter turnout. As Defendants know, turnout in the Virginia Democratic Presidential Primary was 146% higher than it was for the 2004 Democratic Primary. *See* http://www.fec.gov/pubrec/fe2004/2004pres.xls (Federal Election Commission). The Commonwealth's own documents show that the agencies and officials responsible for ensuring the lawful, proper, efficient, and fair administration of elections are aware of the potential high turnout and possible shortages of resources to meet the needs of voters presenting to vote. Defendant Rodrigues herself has declared that the Commonwealth is expecting a "record turnout." State Board of Elections, *Election Officials Prepare for High Voter Turnout,* Oct. 17, 2008, *available at* http://www.sbe.virginia.gov/cms/Media/Press_Releases/ELECTION_OFFICIALS_PREPARE_ FOR_HIGH_VOTER_TURNOUT.html.

28. Despite the knowledge of these facts, Defendants adopted allocation plans that they know will be inadequate and will cause shocking disparities across precincts in the ratio of voters to voting machines. *See* Mabane Decl.¶10.

29. Despite the knowledge of these facts, Defendants adopted allocation plans that they know will be inadequate and will cause shocking disparities across precincts in the ratio of voters to poll workers. *See* Mabane Decl.¶11.

30. Under the current plan for Norfolk, some precincts have a voters-to-machine ratio of 196 to 1, while others have voters-to-machine ratios of 496 to 1, and voters-to-poll worker ratios range from 73 to 1 to 283 to 1.Virginia State Board of Elections, *available at* http://www.sbe.virginia.gov/cms/Statistics_Polling_Places/Registration_Statistics/2008/Index.ht ml; 2008 Resource Allocation Plans, Norfolk Registrar (on file with Plaintiffs' counsel).

31.     Under the current plan for Richmond, some precincts have a voters-to-machine ratio of 188 to 1, while others have voters-to-machine ratios of 452 to 1, and voters-to-poll worker ratios range from 113 to 1 to 231 to 1. Virginia State Board of Elections, *available at* http://www.sbe.virginia.gov/cms/Statistics_Polling_Places/Registration_Statistics/2008/Index.ht ml; 2008 Resource Allocation Plans, Norfolk Registrar (on file with Plaintiffs' counsel).34.

32.     Under the current plan for Virginia Beach, some precincts have a voters-to-machine ratio of 121 to 1, while others have voters-to-machine ratios of 452 to 1, and voters-to-poll worker ratios range from 94 to 1 to 390 to 1. Virginia State Board of Elections, Virginia State Board of Elections, *available at* http://www.sbe.virginia.gov/cms/Statistics_Polling_Places/Registration_Statistics/2008/Index.ht ml; 2008 Resource Allocation Plans, Norfolk Registrar (on file with Plaintiffs' counsel).

33.     There is no explanation or rationale (acceptable or otherwise) for the creation, certification, ratification, approval, allowance, adoption, implementation, and/or use of these varied and irrational resource allocation plans by Norfolk, Richmond, and Virginia Beach. Defendants knew or should have known of the level of polling place resources allocated in prior elections, the problems caused by the misallocation and/or under-allocation of resources in prior elections, the effects of this misallocation and/or under-allocation, and the increased number of registered voters for the 2008 General Election, and should have acted accordingly and lawfully in response.

34.     There is no explanation or rationale (acceptable or otherwise) for the disparities in allocation as described above, which will affect both the manner and the extent to which voters can exercise their franchise.  In addition, Defendants have made no real effort to address this

burden on the voters' franchise -- despite the fact that Defendants have been made aware of them and have been asked to correct them. *See* Mabane Decl.¶¶ 12,15-18,22.

35.     The distribution of machines in Richmond for the upcoming election is clearly biased against voters in precincts with high proportions of African-Americans. *See* Mabane Decl.¶ 13. In other words, precincts with high proportions of African-Americans have substantially more registered voters per allocated machine than precincts with fewer African-Americans.

36.     The distribution of machines in Richmond for the upcoming election is clearly biased against voters in precincts with high proportions of African-Americans. *Id.* In other words, precincts with high proportions of African-Americans have substantially more registered voters per allocated machine than precincts with fewer African-Americans. *Id.* There was similar relationship in the allocation of voting machines in 2004 *id.*

37.     There is no explanation or rationale (acceptable or otherwise) for the disparities in allocation in certain communities of color, and the impact of such disparities are known to Defendants.

38.     In light of Defendants' knowledge about the inadequacies of their resource allocation plans and the disparate impact based on race that results therefrom in Richmond, Norfolk, and Virginia Beach, Defendant Kaine, Defendant Cunningham, Defendant Pyon, Defendant Rodrigues, and Defendants Harrington, Showalter, Thomas, Dabney, Dockery, Parrish, Barrow, Hinshaw, Maroulis, Brown, Long and Mulderrig (collectively, "Richmond, Norfolk, and Virginia Beach Defendants") have acted and are acting with the intent to

discriminate against African-American Plaintiffs who reside and vote in Richmond, Norfolk, and Virginia Beach (collectively, "African-American Plaintiffs").

39.     These disparities (in both predominately White and predominately Black communities) will unduly burden or deny Plaintiffs' and the Virginia NAACP members' right to vote. *See* Mabane Decl.¶¶15-18,22.

40.     Because of mal-distribution of voting machines that disadvantages precincts with high proportions of African-Americans in Richmond, Norfolk, and Virginia Beach, the deterrence of voters due to insufficient resources is more likely to affect African-American voters in these cities. *See* Mabane Decl.¶ 19. In other words, precincts in Richmond, Norfolk, and Virginia Beach that have high proportions of African-Americans face a higher likelihood of long lines and "lost" voters on Election Day than precincts with more White voters. *Id.*

41.     This conclusion is evidenced, in large measure, by the problems in the 2004 General Election, when Virginia voters were unable to vote because of the long lines. *See* John-Henry Doucette and Tony Germanotta, *It's Standing Room Only*, Virginian-Pilot, November 3, 2004. *See* Mabane Decl.¶12. (finding that the lines to vote could be far worse that they were in 2004 and even more voters could be deterred from casting a ballot).

42.     The problems of long lines will be exacerbated by even higher turnout, the misallocation and/or under-allocation of poll workers and/or the fact that the polls are currently scheduled to close promptly at 7:00 p.m. *See* Mabane Decl.¶¶ 11,12,18.

43.     The result of these unlawful lapses will be the creation of unconscionably and unacceptable long lines that will infringe on voters' right to vote, and, even worse, disenfranchise those voters who do not or cannot wait in such lines. *See* Mabane Decl.¶¶ 16-18,22.

44.     This will have an even more profound affect in communities of color. *See* Mabane

Decl.¶19.

45.     Defendants' unconstitutional and otherwise unlawful conduct could affect the

rights of tens of thousands of voters, including specifically African-American voters, if not

remedied by this Court. *See* Mabane Decl.¶22.

## COUNT I

### SECTION 1983 CLAIM OF DEPRIVATION OF THE FUNDAMENTAL RIGHT TO VOTE, IN VIOLATION EQUAL PROTECTION AND DUE PROCESS CLAUSES OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION

### *BY ALL PLAINTIFFS AGAINST ALL DEFENDANTS*

46.     Plaintiffs repeat and re-allege each and every one of the preceding assertions,

allegations, and claims as though set forth fully herein.

47.     Defendants, acting under color of state law, have approved, certified, ratified,

allowed, implemented, and/or used polling place resource allocation plans that severely burden

and deny equal and fair access to the right to vote, and results in arbitrary and disparate treatment

of voters.

48.     The resource allocation plans of Norfolk, Richmond, and Virginia Beach (formal

or otherwise) are not uniform in standards, requirements, or allocations of polling place

resources, including, specifically, voting machines and poll workers.

49.     The resource allocation plans of Norfolk, Richmond, and Virginia Beach (formal

or otherwise) treat voters, including Plaintiffs, differently in the allocation of polling place

resources, including, specifically, voting machines and poll workers.

50.     The resource allocation plans of Norfolk, Richmond, and Virginia Beach (formal

or otherwise) burden and infringes on voters' rights and disfranchises voters, including

Plaintiffs' rights and Plaintiffs, because they cause long lines to form that severely burden or deny the right to vote.

51.     By failing to have uniform standards for the allocation of polling place resources, including, specifically, voting machines and poll workers; by treating voters (including Plaintiffs) differently in the allocation of polling place resources, including, specifically, voting machines and poll workers; and/or by burdening and/or disenfranchising voters (including Plaintiffs) through the under-allocation and/or misallocation of polling place resources, including, specifically, voting machines and poll workers, all without any legitimate and/or rational reason, Defendants have acted and are acting to deprive Plaintiffs of the Equal Protection of the Laws and the Due Process Law guaranteed to them by the Fourteenth Amendment to the U.S. Constitution.

52.     By approving, certifying, ratifying, allowing, selecting, implementing, and/or using polling place resources allocation plans (formal or otherwise) that are not uniform; that treat voters (including Plaintiffs) differently in the allocation of polling place resources, including, specifically, voting machines and poll workers; and/or that burden and/or disenfranchise voters (including Plaintiffs) through the under-allocation and/or misallocation of polling place resources, including, specifically, voting machines and poll workers, all without any legitimate and/or rational reason, Defendants have acted and are acting to deprive Plaintiffs of the Equal Protection of the Laws and the Due Process Law guaranteed to them by the Fourteenth Amendment to the U.S. Constitution.

53.     By taking these actions with respect to Plaintiffs, Defendants have violated Plaintiffs' rights under the Fourteenth Amendment to the U.S. Constitution, and are liable to Plaintiffs, jointly and severally.

54      In light of these violations, Plaintiffs are entitled to and request the relief specified herein.

## COUNT II

**SECTION 1983 CLAIM OF DEPRIVATION OF THE FUNDAMENTAL RIGHT TO VOTE, IN VIOLATION EQUAL PROTECTION AND DUE PROCESS CLAUSES OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION**

*BY THE AFRICAN-AMERICAN PLAINTIFFS AGAINST*
*DEFENDANTS KAINE, CUNNINGHAM, PYON, AND RODRIGUES*
*AND THE RICHMOND, NORFOLK, AND VIRGINIA BEACH DEFENDANTS*

55.     The African-American Plaintiffs repeat and re-allege each and every one of the preceding assertions, allegations, and claims as though set forth fully herein.

56.     Defendants Kaine, Cunningham, Pyon, and Rodrigues and the Richmond, Norfolk, and Virginia Beach Defendants, acting under color of state law, have approved, certified, ratified, allowed, implemented, and/or used polling place resource allocation plans that severely burden and deny equal and fair access to the right to vote, and results in arbitrary and disparate treatment of voters.

57.     African-American Plaintiffs possess the right to exercise their franchise free of discrimination, and Defendants cannot infringe upon or deny that right.

58.     The resource allocation plans of Richmond, Norfolk, and Virginia Beach (formal or otherwise) are not uniform in standards, requirements, or allocations of polling place resources, including, specifically, voting machines and poll workers, and impact African-Americans voters, including the African-American Plaintiffs, disparately and intentionally discriminatorily.

59.     The resource allocation plans of Richmond, Norfolk, and Virginia Beach (formal or otherwise) treat African-American voters, including African-American Plaintiffs, differently

in the allocation of polling place resources, including, specifically, voting machines and poll workers, and impact African-Americans voters, including the African-American Plaintiffs, disparately.

60.     The resource allocation plans of Richmond, Norfolk, and Virginia Beach (formal or otherwise) burden and infringes on African-American voters' rights and disenfranchises African-American voters, including the rights of the African-American Plaintiffs and those Plaintiffs themselves, disparately, by creating in these communities' long lines that will severely burden and deprive African-American voters of the right to vote.

61.     The resource allocation plans of Richmond, Norfolk, and Virginia Beach (formal or otherwise) have a disparate impact on African-American voters in Richmond, Norfolk, and Virginia Beach, including the African-American Plaintiffs.

62.     By failing to have uniform standards for the allocation of polling place resources, including, specifically, voting machines and poll workers; by treating African-American voters (including the African-American Plaintiffs) differently in the allocation of polling place resources, including, specifically, voting machines and poll workers; and/or by burdening and/or disenfranchising African-American voters (including the African-American Plaintiffs) through the known under-allocation and/or misallocation of polling place resources, including, specifically, voting machines and poll workers, all without any legitimate and/or rational reason and with the intent to discriminate, Defendants Kaine, Cunningham, Pyon, and Rodrigues and the Richmond, Norfolk, and Virginia Beach Defendants have acted and are acting to deprive the African-American Plaintiffs of the Equal Protection of the Laws and the Due Process Law guaranteed to them by the Fourteenth Amendment to the U.S. Constitution.

63.     By approving, certifying, ratifying, allowing, selecting, implementing, and/or using polling place resources allocation plans (formal or otherwise) that are not uniform; that treat African-American voters (including African-American Plaintiffs) differently in the allocation of polling place resources, including, specifically, voting machines and poll workers; and/or that burden and/or disenfranchise African-American voters (including African-American Plaintiffs) through the known under-allocation and/or misallocation of polling place resources, including, specifically, voting machines and poll workers, all without any legitimate and/or rational reason and with the intent to discriminate, Defendants Kaine, Cunningham, Pyon, and Rodrigues and the Richmond, Norfolk, and Virginia Beach Defendants have acted and are acting to deprive the African-American Plaintiffs of the Equal Protection of the Laws and the Due Process Law guaranteed to them by the Fourteenth Amendment to the U.S. Constitution.

64.     By taking these actions against the African-American Plaintiffs, Defendant Kaine, Cunningham, Pyon, and Rodrigues, and the Richmond, Norfolk, and Virginia Beach Defendants violated these Plaintiffs' rights under the Fourteenth Amendment of the United States Constitution, and they are liable to Plaintiffs for these violations, jointly and severally.

65.     In light of these violations, the African-American Plaintiffs are entitled to and request the relief specified herein.

## COUNT III

## VIOLATION OF SECTION TWO THE OF THE VOTING RIGHTS ACT OF 1965

*BY THE AFRICAN-AMERICAN PLAINTIFFS AGAINST*
*DEFENDANTS KAINE, CUNNINGHAM. PYON, AND RODRIGUES*
*AND THE RICHMOND, NORFOLK, AND VIRGINIA BEACH DEFENDANTS*

66.     The African-American Plaintiffs repeat and re-allege each and every one of the preceding assertions, allegations, and claims as though set forth fully herein

67.    The Voting Rights Act of 1965 provides, in relevant part, that:

(a) No voting qualification or prerequisite to voting or standard, practice, or procedure shall be imposed or applied by any State or political subdivision in a manner which results in a denial or abridgement of the right of any citizen of the United States to vote on account of race or color, or in contravention of the guarantees set forth in section 4(f)(2) [42 USCS § 1973b(f)(2)], as provided in subsection (b).
(b) A violation of subsection (a) is established if, based on the totality of circumstances, it is shown that the political processes leading to nomination or election in the State or political subdivision are not equally open to participation by members of a class of citizens protected by subsection (a) in that its members have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice. The extent to which members of a protected class have been elected to office in the State or political subdivision is one circumstance which may be considered: Provided, That nothing in this section establishes a right to have members of a protected class elected in numbers equal to their proportion in the population. 42 U.S.C. § 1973.

68.    Private litigants may enforce their rights under 42 U.S.C. § 1973 by bringing a suit under 42 U.S.C. § 1983.

69.    The resource allocation plans of Richmond, Norfolk, and Virginia Beach (formal or otherwise) are not uniform in standards, requirements, or allocations of polling place resources, including, specifically, voting machines and poll workers.

70.    The resource allocation plans of Richmond, Norfolk, and Virginia Beach (formal or otherwise) treat African-American voters, including African-American Plaintiffs, differently in the allocation of polling place resources, including, specifically, voting machines and poll workers.

71.    The resource allocation plans of Richmond, Norfolk, and Virginia Beach (formal or otherwise) burden and infringe on African-American voters' rights and disenfranchise African-American voters, including the rights of the African-American Plaintiffs and these Plaintiffs themselves, by creating long lines that voters do not, cannot, and should not have to tolerate.

72.   The resource allocation plans of Richmond, Norfolk, and Virginia Beach (formal or otherwise) have a discriminatory effect on African-American voters, including the African-American Plaintiffs.

73.   The resource allocation plans of Richmond, Norfolk, and Virginia Beach (formal or otherwise) provide African-American voters in these cities, including the African-American Plaintiffs, with less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice.

74.   The approval, certification, ratification, allowance, implementation, and/or use of the polling place resource allocation plans in Richmond, Norfolk, and Virginia Beach have a discriminatory effect on African-American voters in these cities, including, specifically, the African-American Plaintiffs.

75.   The approval, certification, ratification, allowance, implementation, and/or use of the polling place resource allocation plans in Richmond, Norfolk, and Virginia Beach result in African-American voters in these cities, including the African-American Plaintiffs, having less of an opportunity than other members of the electorate to participate in the political process and elect representatives of their choice.

76.   These actions, separately and/or combined, constitute a violation of Section Two of the Voting Rights Act of 1965, and Defendant Kaine, Cunningham, Pyon, and Rodrigues and the Richmond, Norfolk, and Virginia Beach Defendants are liable to the African-American Plaintiffs, jointly, and severally.

77.   In light of these violations, the African-American Plaintiffs are entitled to and request the relief specified herein.

**COUNT IV**

## VIOLATION OF ARTICLE I, SECTION 11 OF THE VIRGINIA CONSTITUTION

### *BY THE AFRICAN-AMERICAN PLAINTIFFS AGAINST DEFENDANTS KAINE, CUNNINGHAM, PYON, AND RODRIGUES AND THE RICHMOND, NORFOLK, AND VIRGINIA BEACH DEFENDANTS*

78.　The African-American Plaintiffs repeat and re-allege each and every one of the preceding assertions, allegations, and claims as though set forth fully herein.

79.　The African-American Plaintiffs possess the right to exercise their franchise free of discrimination, and Defendants Kaine, Pyon, Cunningham and Rodrigues and the Richmond, Norfolk, and Virginia Beach Defendants cannot infringe upon or deny that right.

80.　The resource allocation plans of Richmond, Norfolk, and Virginia Beach (formal or otherwise) are not uniform in standards, requirements, or allocations of polling place resources, including, specifically, voting machines and poll workers, and impact African-Americans voters, including the African-American Plaintiffs, disparately.

81.　The resource allocation plans of Richmond, Norfolk, and Virginia Beach (formal or otherwise) treat African-American voters, including African-American Plaintiffs, differently in the allocation of polling place resources, including, specifically, voting machines and poll workers, and impact African-Americans voters, including the African-American Plaintiffs, disparately.

82.　The resource allocation plans of Richmond, Norfolk, and Virginia Beach (formal or otherwise) burden and infringe on African-American voters' rights and disenfranchise African-American voters, including the rights of the African-American Plaintiffs and those Plaintiffs themselves, disparately, by creating long lines that voters do not, cannot, and should not have to tolerate.

83.     The resource allocation plans of Richmond, Norfolk, and Virginia Beach (formal or otherwise) have a disparate impact on African-American voters in Richmond, Norfolk, and Virginia Beach, including the African-American Plaintiffs.

84.     By failing to have uniform standards for the allocation of polling place resources, including, specifically, voting machines and poll workers; by treating African-American voters (including the African-American Plaintiffs) differently in the allocation of polling place resources, including, specifically, voting machines and poll workers; and/or by burdening and/or disenfranchising African-American voters (including the African-American Plaintiffs) through the under-allocation and/or misallocation of polling place resources, including, specifically, voting machines and poll workers, all without any legitimate and/or rational reason and with the intent to discriminate, Defendants Kaine, Cunningham, Pyon, and Rodrigues and the Richmond, Norfolk, and Virginia Beach Defendants have acted and are acting to deprive the African-American Plaintiffs of their rights under the Virginia Constitution.

85.     By approving, certifying, ratifying, allowing, selecting, implementing, and/or using polling place resources allocation plans (formal or otherwise) that are not uniform; that treat African-American voters (including African-American Plaintiffs) differently in the allocation of polling place resources, including, specifically, voting machines and poll workers; and/or that burden and/or disenfranchise African-American voters (including African-American Plaintiffs) through the under-allocation and/or misallocation of polling place resources, including, specifically, voting machines and poll workers, all without any legitimate and/or rational reason and with the intent to discriminate, Defendants Kaine, Cunningham, Pyon, and Rodrigues and the Richmond, Norfolk, and Virginia Beach Defendants have acted and are acting to deprive the African-American Plaintiffs of their rights under the Virginia Constitution.

86. By taking these actions against the African-American Plaintiffs, Defendants Kaine, Cunningham, Pyon, and Rodrigues and the Richmond, Norfolk, and Virginia Beach Defendants violated these Plaintiffs' rights under the Virginia Constitution, and they are liable to Plaintiffs for these violations, jointly and severally.

87. In light of these violations, African-American Plaintiffs are entitled to and request the relief specified herein.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs, each and every one of them, respectfully request that the Court issue the following relief against Defendants:

A. Assume jurisdiction over this action;

B. Declare that the Defendants, jointly and severally, through their allocation of polling place resources for the November 4, 2008 General Election have violated the Equal Protection and Due Process Clauses of the Fourteenth Amendment to the U.S. Constitution;

C. Declare that the Defendants Kaine, Cunningham, Pyon, and Rodrigues and the Richmond, Norfolk, and Virginia Beach Defendants, jointly and severally, through their allocation of polling place resources for the November 4, 2008, General Election have violated Section Two of the Voting Rights Act of 1965;

D. Declare that the Defendants Kaine, Cunningham, Pyon, and Rodrigues and the Richmond, Norfolk, and Virginia Beach Defendants, jointly and severally, through their allocation of polling place resources for the November 4, 2008 General Election have violated Virginia Constitution;

F. Require Defendants to

1.      secure an adequate number of machines and allocate those machines in a more equitable manner and in a way that ensures that voters do not have to wait more than 45 minutes to vote, or

2.      re-allocate the existing inventory of machines in a more equitable manner, instruct poll workers to offer voters whose wait to vote by machine is likely to exceed 45 minutes the option of waiting for a machine or voting with a paper ballot, and ensure that each polling site has an adequate supply of paper ballots to accommodate the expected surge in turnout and each and every voter who opts to vote by paper ballot;

G.      Require Defendants to extend voting hours for the November 4, 2008 General Election to 9:00 p.m. so to provide voters with more time to exercise their franchise;

H.      Award reasonable attorney fees and costs of suit, pursuant to 42 U.S.C. § 1988(b), 42 U.S.C. § 1973l, Fed. R. Civ. P. 54, and any such other statutes and rules as may provide for the recovery of fees and costs brought to vindicate the rights asserted herein; and

I.      Grant such other relief, be it legal or equitable, as this Court deems to be in the interest of justice.

Respectfully submitted,

**ADVANCEMENT PROJECT**

*Judith Browne by HLM*

Judith Browne
Kumiki Gibson
Elizabeth Westfall
M. Aurora Vasquez
James O. Freeman
Francisco Maldonado
Maria Blanco
Advancement Project
1730 M Street, NW, Suite 910
Washington, DC 20036
Phone (202) 728-9557

**HILL, TUCKER & MARSH**

*Henry L. Marsh, III*

Henry L. Marsh, III
Frederick H. Marsh
Hill, Tucker & Marsh, PLLC.
422 East Franklin Street, Suite 301
Richmond, Virginia 23219
(804) 648-9073
htm@htm-law.com

Angela Ciccolo, Interim General Counsel
Anson Asaka, Assistant General Assistant Counsel
4805 Mount Hope Drive
Baltimore, MD 21215
Phone (410) 580-5792
Counsel for NAACP

COUNSEL FOR PLAINTIFFS

## LIST OF DEFENDANTS

TIMOTHY M. KAINE, Governor of the Commonwealth of Virginia; JEAN CUNNINGHAM, Chairman, Virginia State Board of Elections; HAROLD PYON, Vice Chairman, Virginia State Board of Elections; NANCY RODRIGUES, Secretary, Virginia State Board of Elections; GEORGE WILLIAM THOMAS, Chairman, City of Richmond Electoral Board; CECILIA DABNEY, Vice Chairman, City of Richmond Electoral Board; DOROTHY DOCKERY, Secretary, City of Richmond Electoral Board; J. KIRK SHOWALTER, City of Richmond General Registrar; JAMES H. HINSHAW, Chairman, City of Norfolk Electoral Board; TED MAROULIS, Vice Chairman, City of Norfolk Electoral Board; W. DONALD BROWN, Secretary, City of Norfolk Electoral Board; ELISA LONG, City of Norfolk General Registrar; J.A.G. PARRISH, Chairman, City of Virginia Beach Electoral Board; TIM BARROW, Vice Chairman, City of Virginia Beach Electoral Board; SHIRLEY MULDERRIG, Secretary, City of Virginia Beach Electoral Board; and EDITH HARRINGTON, City of Virginia Beach General Registrar, in their official capacities,

## LIST OF ATTORNEYS

Judith Browne
Kumiki Gibson
Elizabeth Westfall
M. Aurora Vasquez
Suite 301
James O. Freeman
Francisco Maldonado
Maria Blanco
Advancement Project
1730 M Street, NW, Suite 910
Washington, DC 20036
 Phone (202) 728-9557

Angela Ciccolo, Interim General Counsel
Anson Asaka, Assistant General Assistant Counsel
4805 Mount Hope Drive
Baltimore, MD 21215
Phone (410) 580-5792
Counsel for NAACP

Henry L. Marsh, III
Frederick H. Marsh
Hill, Tucker & Marsh, PLLC.
422 East Franklin Street,

Richmond, Virginia 23219
(804) 648-9073
htm@htm-law.com